708 F.2d 537
 L.P.S., a Minor, by Kristin A. KUTZ, as next friend,
Plaintiff-Appellee,
v.
Richard D. LAMM, Governor of the State of Colorado; Raymond
Liedig, M.D., or his successor or interim appointee,
Executive Director of the Colorado Department of
Institutions; Haydee M. Kort, M.D., Superintendent of the
Colorado State Hospital, Pueblo, Colorado; Terrance
McGrann, Assistant Superintendent of the Colorado State
Hospital, Pueblo, Colorado; Karen Brody, M.D., Staff
Psychiatrist, Colorado State Hospital, Pueblo, Colorado;
Kalish Jaitley, Psy.D., Director, Child and Adolescent
Treatment Center, Colorado State Hospital, Pueblo, Colorado;
Louis Brothers, Team Leader, Child and Adolescent Treatment
Center, Colorado State Hospital, Pueblo, Colorado; Kathy
Cordova, Psychiatric Technician, Child and Adolescent
Treatment Center, Colorado State Hospital, all employees and
agents acting therefor; James Walch, Director, Pueblo
County Department of Social Services, Pueblo, Colorado;
William Berg, Supervisor, Pueblo County Department of Social
Services, Pueblo, Colorado; Robert Villarreal, Caseworker,
Pueblo County Department of Social Services, Pueblo,
Colorado, Defendants-Appellees.
 No. 82-2280.
 United States Court of Appeals,
Tenth Circuit.
 June 2, 1983.
 
 George E. Smith, Pueblo County Legal Services, Inc., Pueblo, Colo., for plaintiff-appellant.
 Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., and Margery T. Bornstein, Asst. Atty. Gen., Human Resources Section, State of Colo., Denver, Colo., for State defendants-appellees.
 Justin R. Melat and Glenn S. Pressman, Colorado Springs, Colo., for defendants-appellees James Walch, William Berg and Robert Villarreal.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant minor patient L.P.S. ("patient") appeals from the district court's denial of his motion to reinstitute his civil rights action against various Colorado state officials and employees. The patient's civil rights action arose from his allegedly illegal confinement at the Colorado State Hospital in Pueblo from March 11 to March 15, 1981, pursuant to a statutory procedure which was later declared unconstitutional by the Colorado Supreme Court. A recital of pertinent facts will facilitate our review.
 
 
 3
 The patient had been confined to the Colorado State Hospital pursuant to statutory short-term certification, which was extended for three months on December 11, 1980. A trial was held on December 18, 1980, and the jury upheld the certification, finding the patient to be mentally ill and a danger to himself and others.
 
 
 4
 The short term certification expired on March 11, 1981, at which point the Pueblo County Department of Social Services ("Department"), as the patient's legal custodian, through its caseworker, Robert Villarreal, signed a voluntary admission of the patient into Colorado State Hospital. This voluntary commitment procedure was authorized by a statute which was later struck down as unconstitutional by the Colorado Supreme Court. The patient at this time did not wish to be confined to the Colorado State Hospital and attacked his "voluntary" confinement by petition for writ of habeas corpus. On the day of the hearing on the petition, March 16, 1981, the Department withdrew the voluntary admission. Dr. Karen Brody, a member of the State Hospital staff and the patient's doctor, requested and received an emergency treatment order pursuant to Colorado statute, which authorized the involuntary recommitment of the patient.
 
 
 5
 The patient then filed a second petition for writ of habeas corpus, alleging that the emergency treatment procedure was a fraud on the court and that the patient was being unlawfully confined. The court found that the emergency procedure followed was proper and that the patient was committed and held involuntarily for a valid medical reason.
 
 
 6
 After the emergency treatment the patient was again certified on a short-term basis by Dr. Brody. A jury trial was held on May 5, 1981. The jury found that the patient was mentally ill and a danger to himself and others. The patient's commitment was eventually dismissed on June 30, 1981 after a subsequent jury found him not to be mentally ill.
 
 
 7
 The patient filed this civil rights action pursuant to 42 U.S.C.A. Secs. 1983 and 1985 (1981), alleging deprivation of constitutional rights by reason of his confinement from March 11, to June 30, 1981. The patient thereafter amended his complaint, alleging he was illegally confined from the time he was placed on voluntary status by his caseworker to the time of his involuntary recommitment in the Pueblo District Court on March 16, 1981. All defendants filed motions to dismiss. After the hearing on the motions to dismiss, at which arguments were made and discussions with the court were had, the parties entered into a stipulation to dismiss without prejudice. A written stipulation was signed by all parties. The court then issued an order dismissing the case without prejudice, with the stipulation incorporated therein.
 
 
 8
 Among other things, the stipulation provided that the patient would have the right to move the court to reinstitute the case within thirty days after the final ruling by the Colorado Supreme Court in a case then before it concerning the constitutionality of the voluntary commitment statute. The stipulation also provided that the court would not guarantee it would allow the case to be reinstituted, but merely provided the right to so move. After the Colorado Supreme Court struck down the statute as unconstitutional, the patient moved the court to reinstitute the action. The trial court declined to reinstitute, and the motion to reconsider was also denied. The patient then filed this appeal.
 
 
 9
 The patient's main contention is that the trial court's denial of his motion to reinstitute was arbitrary and capricious in that a civil rights action should not be dismissed, particularly at the pleading stage, "[u]nless it appears beyond a reasonable doubt that appellants can prove no set of facts supporting their claim for relief." Appellant's brief at p. 8 (quoting Hudson v. Harris, 478 F.2d 244, 246 (10th Cir.1973)) (emphasis supplied by appellant). The patient contends he has set out all the allegations and elements necessary to seek redress under 42 U.S.C.A. Secs. 1983 and 1985. Thus, the patient contends, the trial court "[a]cted precipitously and without proper appreciation of the liberality of construction concerning civil rights cases," appellant's brief at p. 9, when it denied his motion to reinstitute the case.
 
 
 10
 We need not reach the question of whether the patient has made out a cognizable claim under 42 U.S.C.A. Secs. 1983 and 1985. The patient, in his brief, fails to address the issue of the effect of the stipulation on the posture of this case. The defendants contend that "[w]hile the trial court may not have, as a matter of law, the authority and discretion to dismiss a minor's civil rights lawsuit, the trial court in this case was granted said authority and discretion by the terms of the stipulation." Appellees' Walch, Berg and Villarreal's brief at p. 7. This contention merits further examination.
 
 
 11
 We have stated that "[w]e cannot overlook or disregard stipulations which are absolute and unequivocal. Stipulations of attorneys may not be disregarded or set aside at will." United States v. Northern Colorado Water Conservancy District, 608 F.2d 422, 431 (10th Cir.1979) (citations omitted). In Northern Colorado Water the City and County of Denver attempted to circumvent stipulations incorporated into 1955 and 1964 decrees in which it had "freely and voluntarily participated." Id. at 430. We stated: "[u]nder these circumstances Denver cannot now assert any rights which it stipulated away in 1955 and 1964." Id. at 431.
 
 
 12
 Other cases illustrate that courts do not treat attorneys' stipulations lightly. For example, in United States v. Webb, 595 F.2d 203 (4th Cir.1979), the government argued that no effect should be given to that part of the stipulation which gave the district court authority to designate proceeds from a foreclosure sale. That court stated:
 
 
 13
 [I]t would be patently unjust to allow the United States to pick and choose which parts of the Proposed Stipulation it wants to abide by. It is one thing to oppose the motion of the taxpayer on its merits, but quite another to oppose the provision in the stipulation giving the district court the authority to decide the question. Having sold the property and received the proceeds, the government will not be permitted to argue that the court may not direct distribution of the proceeds as it agreed to by accepting the benefit of the factual stipulation.
 
 
 14
 595 F.2d at 206.
 
 
 15
 This court is likewise reluctant to relieve parties from the benefits, or detriments, of their stipulations. We note that it is not our function to review the content of stipulations to decide their relative worth; attorneys stipulate many things for many reasons in preparation for and in the course of trials. For example, in Kinsella v. Leonard, 415 F.2d 574 (10th Cir.1969), we upheld the trial court's authority to enter judgment for the amount of damages stipulated, which was a different amount from the jury's damage award. In Lyles v. American Hoist & Derrick Co., 614 F.2d 691 (10th Cir.1980), which concerned apportionment of settlement funds by the district court as per stipulation, we noted that the appealing party may have been entitled to more money "[b]ut for the stipulation", id. at 694. We refused to disregard the stipulation.
 
 
 16
 In this case, the stipulation entered into by the parties and adopted by the court is clear and unambiguous: "[t]he Court advised that the Court would not guarantee that such a reinstitution or reopening would be allowed, but only that the right to request it might be provided." [R., Vol. I p. 59]. The patient, by voluntarily and freely agreeing to this stipulation, vested the trial court with discretion to decide whether to allow reinstitution of the patient's case. In our view, this stipulation is neither improvident nor would it work a manifest injustice. See In re Westinghouse Electric Corp., 570 F.2d 899 (10th Cir.1978) (per curiam). Therefore, we enforce the stipulation as agreed to by the parties.
 
 
 17
 We must further inquire whether the trial court abused its discretion in denying the patient's motion to reinstitute his cause of action. "The trial court's conduct of trial proceedings, including rulings on motions and objections, will not be disturbed on appeal unless it affirmatively appears from the record that the trial court abused its discretion." Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.), cert. denied, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978) (citation omitted).
 
 
 18
 We recognize that appellate courts have reversed trial courts for abuse of discretion for failure to reinstate a case after dismissal. Most of these cases arise from a dismissal for failure to prosecute. See, e.g., Brown v. O'Leary, 512 F.2d 485 (5th Cir.1975) and Bibeau v. Northeast Airlines, Inc., 429 F.2d 212 (D.C.Cir.1970). These opinions stand generally for the proposition that the sanction of dismissal is a harsh remedy which should not uniformly bar plaintiffs from litigating their causes on the merits simply because of the dereliction of counsel. See generally Bibeau v. Northeast Airlines, Inc., supra. These cases, however, do not deal with the situation where a stipulation grants the trial court with authority to rule adversely on a motion to reinstitute.
 
 
 19
 The patient seems to contend that the trial court abused its discretion by considering the interest of the minor in denying the motion to reinstitute, rather than determining whether the patient had a cognizable claim under Sec. 1983. See Appellant's brief at pp. 10-11. However, the stipulation incorporated into the trial court's order of dismissal granted the court authority to consider the child's interest vis-a-vis the motion to reinstitute: "[i]t could be destructive of the child's interest ... to go forward with this matter...." [R., Vol. I p. 59].[1] The trial court, in part, based its denial of the patient's motion to reinstitute on these considerations. [R., Vol. I p. 89]. Rulings of a trial court in accordance with stipulations will not be considered erroneous on appeal. See Lyles v. American Hoist & Derrick Co., supra. We hold that the trial court did not abuse its discretion in denying patient's motion to reinstitute the case.
 
 
 20
 AFFIRMED.
 
 McKAY, Circuit Judge, dissenting:
 
 21
 When others, including the personal attorney of an incompetent, stipulate away the rights of that incompetent, the stipulation should be strictly construed against the surrender of important rights. Nothing in the stipulation before us indicates anything other than a purpose to delay litigation pending a decision of the Colorado Supreme Court. The pertinent sentence reads as follows: "[I]t could be destructive of the child's interest and judicially wasteful to go forward with this matter which by reason ought to be ruled on by the Colorado Supreme Court, as a matter of first impression." As for the trial court's reservation about not guaranteeing reinstatement, it could not be any broader than the court's power. Its power was to deny reinstatement if the complaint did not state a cause of action or the motion was not timely under the stipulation. Even the trial court in its order denying reinstatement appears to acknowledge (as it must) that the complaint states a cause of action. Whatever the best interest of the plaintiff may be perceived to be, I see nothing to justify refusing to reinstate on that ground in this stipulation. The law does not authorize us to refuse people the right to vindicate their interests because we believe that would be against their best interest or, as the trial court observed, because we don't think the recovery will be large.*
 
 
 22
 I would direct the trial court to reinstate the well pleaded cause of action for the denial of this minor's constitutional rights.
 
 
 
 [1]
 This portion of the stipulation reads in full as follows: "4. And that it could be destructive of the child's interest and judicially wasteful to go forward with this matter which by reason ought to be ruled on by the Colorado Supreme Court, as a matter of first impression." [R., Vol. I p. 59]. We are not of the view that consideration of the patient's interest is limited by the dependent clause "which by reason ought to be ruled on by the Colorado Supreme Court ..."; that is, that consideration of the patient's interest was related solely to the disposition of the case pending in the Colorado Supreme Court at that time. While the sentence may not be a model of exactitude in draftsmanship, we believe this portion of the stipulation is not ambiguous. It gave the trial court authority to consider the patient's interest in ruling on a motion to reinstitute
 
 
 *
 In a recent case, a jury thought seven days of negligently caused anxiety was worth $500,000 in actual damages and $10,000,000 in punitive damages. Silkwood v. Kerr-McGee Corp., 485 F.Supp. 566 (W.D.Okl.1979), rev'd in part on other grounds, 667 F.2d 908 (10th Cir.1981), appeal docketed, 50 U.S.L.W. 3949 (U.S. May 20, 1982)