**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

JOHNS MANVILLE COPORATION, a
Delaware corporation, JOHNS
MANVILLE, a Delaware corporation,

Plaintiffs - Appellants,

v.

KNAUF INSULATION, LLC, a Delaware
corporation, KNAUF INSULATION
GMBH, a German corporation,

Defendants - Appellees.

No. 18-1086
(D.C. No. 1: 15-CV-00531-RBJ)
(D. Colo.)

### ORDER AND JUDGMENT[*]

Before **PHILLIPS**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

Johns Manville Corporation (JM) and Knauf Insulation, LLC (Knauf) are

---

[*] Oral argument would not materially assist the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.
This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R.
32.1(A). Citation to unpublished decisions is not encouraged, but not prohibited. Fed. R.
App. 32.1. Citation is appropriate as it relates to law of the case, issue preclusion and
claim preclusion. Unpublished decisions may also be cited for their persuasive value.
10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an
appropriate parenthetical notation – (unpublished). *Id*.

competitors in the fiberglass insulation industry.[1]  Both employed Dr. William Johnson, a metallurgist,[2] albeit at different times.  Johnson left JM for greener pastures at Knauf.  He took with him what are allegedly trade secrets, which he exploited to his and Knauf's benefit.  The ultimate questions for the jury were whether they were trade secrets and whether Knauf improperly benefited from them at JM's expense.  That said, this appeal has a much narrower focus.  It centers on litigation strategy and practice, in particular, the trial judge's interpretation of a trial stipulation, which we review de novo.  We affirm; in doing so we offer a background narrative, but only to place the discreet issue presented into context.

JM and Knauf make fiberglass insulation using a process called rotary fiberization.  The process begins by melting glass at a very high temperature (2,500-2,800º F).  The molten glass is then fed into a "spinner disc," a metal disc rotating at a very high rate of speed (up to 2,000 revolutions per minute).  The centrifugal force created from the disc's rotation pushes the molten glass through rows of tiny orifices in the disc's sidewalls, resulting in small glass fibers.  The glass fibers are then exposed to a flame and/or a flame and compressed air to further reduce their size.  The result is extremely fine glass fibers which are matted together to form fiberglass insulation.

---

[1] Johns Manville, an entity separate from Johns Manville Corporation, and Knauf Insulation GMBH are also a plaintiff and a defendant, respectively.  We refer simply to JM and Knauf.

[2] Metallurgy is "[t]he branch of science and technology concerned with the properties of metals and their production and purification."  *See* https://en.oxforddictionaries.com/definition/metallurgy.

Due to the extreme conditions to which they are exposed, spinner discs eventually deform and corrode. The material used to make a spinner disc is therefore "critical" to extending the disc's life. (Appellees' Supp. App'x Vol. 1 at 131.) For this reason, they are usually made of alloys, "metal[s] made by combining two or more metallic elements," because metals are malleable, ductile, and have high melting points. *See* https://en.oxforddictionaries.com/definition/alloy.

Since at least the early 1990's, JM has made its own spinner discs in house for use in the rotary fiberization process. Knauf, on the other hand, purchased its spinner discs from Owens Corning, a third-party competitor. That changed in 2007, when Knauf hired Johnson.

Johnson initially worked for JM, who hired him in 1992. His employment contract prohibited him from disclosing or using, without permission, JM's confidential information either during his employment or after termination of his employment. During his tenure there, JM used a cobalt-based alloy referred to as GX-4 to make its spinner discs. Although Johnson did not invent GX-4, he was intimately familiar with its composition and performance.

In April 2007, Johnson told JM he was "retiring and going fishing"; in reality, he had already accepted employment with Knauf. (Appellants' App'x Vol. 5 at 442.) Knauf hired Johnson to help it manufacture its own spinner discs in order to reduce its

dependence on Owens Corning's discs, thereby saving money.[3]

Knauf initially made its spinner discs from a publicly-available nickel-based alloy it called RM-3. That alloy worked well in smaller-sized spinner discs but not in larger ones. Johnson recommended Knauf use JM's GX-4 formula, which he took with him when he left JM. He asked Knauf's outside counsel for an analysis of whether that formula was free to practice, i.e., not a protectable trade secret. On April 20, 2010, counsel sent an email to Johnson with a confidential opinion letter attached. *See* Appendix A. That same day, Johnson forwarded the email and the opinion letter to his Knauf colleagues, stating "We are free to practice the [GX-4] . . . composition" but affording no explanation.[4] (Appellants' App'x Vol. 1 at 202.) *See* Appendix B. Soon thereafter, Knauf began using the GX-4 formula to make its own spinner discs; it referred to the new alloy as RM-4.

JM sued Knauf and Johnson alleging misappropriation of trade secrets in violation of Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 to 7-74-110. It also sued Johnson for breach of contract and breach of the implied covenant of good faith and fair dealing. In exchange for his testimony at trial, JM dismissed all claims against

---

[3] Johnson testified to having kept his employment with Knauf a secret because he did not want Owens Corning to discover Knauf's plans to make its own spinner discs, thereby possibly placing Knauf's supply contract with Owens Corning in jeopardy.

[4] The contents of counsel's opinion letter are unknown because, as we will explain, Knauf refused to disclose the opinion letter during discovery, citing the attorney-client privilege. JM assumes Johnson's statement to his colleagues that the GX-4 formula was free to practice reflects the opinion of counsel.

Johnson. That left Knauf as the sole defendant.

Pretrial proceedings were protracted. For our purposes, however, three key events are noteworthy. First, the judge admonished Knauf that it could not claim the attorney-client privilege and at the same time assert a defense relying on the advice of counsel. In other words, it could not rely on a legal opinion without disclosing its contents. Second, invoking the attorney-client privilege, Knauf refused to disclose counsel's opinion letter which was attached to the April 20, 2010 email regarding whether the GX-4 formula was free to practice; it listed the opinion letter on its privilege log as Doc. 724. Finally, the parties entered into the following joint stipulation:

> No Knauf witness shall refer to the existence of or the contents of any opinion of counsel that relates to or references Knauf's RM-4 Alloy provided by Dr. Johnson to Knauf (the "Opinion of Counsel"). This specifically includes Document No. 724 [the April 20, 2010, confidential opinion letter] on Knauf's Privilege Log. No Knauf witness shall imply, suggest, or indicate in any way that the Opinion of Counsel exists. Counsel for Knauf shall not introduce any exhibit that references or implies the existence of the Opinion of Counsel, and will explicitly instruct and admonish all witnesses it calls at trial that are under Knauf's control to testify in accordance with this stipulation. Notwithstanding the above, exhibits or testimony regarding Dr. Johnson's representations that RM-4 or other technologies were "free to practice," free to use, or in the public domain may be offered without referring to the Opinion of Counsel.

(Appellants' App'x Vol. 1 at 131.)

At trial, JM attempted to show (1) the GX-4 formula was a trade secret which it took reasonable measures to keep secret/confidential, (2) Knauf improperly used it, and (3) Knauf was unjustly enriched as a result. For its part, Knauf claimed its use of the GX-4 formula was not improper because (1) it reasonably believed it was not a trade secret based on Johnson's (second-hand) representations to that effect and (2) it was

- 5 -

disclosed in various patents and therefore publicly known.[5]  To that end, it relied in part

on what was to become Exhibit 714, the April 20, 2010 email Johnson sent to his Knauf

colleagues regarding whether the GX-4 formula was free to practice.  However, before

submitting it to the jury, it redacted any reference to the opinion of counsel.  As a result,

the only information available to the jury was Johnson's statement that the GX-4 formula

was free to practice.  *See* Appendix C.  This is a critical point.  It is important to compare

(1) Appendix A, the email counsel sent Johnson with the opinion letter attached, (2)

Appendix B, the email Johnson sent to his colleagues forwarding counsel's email and

opinion letter and stating the RX-4 formula was free to practice, and (3) Appendix C,

Exhibit 714, the redacted email which was submitted to the jury.  Not only did Exhibit

714 not mention the opinion of counsel, none of the witnesses who addressed that exhibit

referred in any way to an opinion of counsel and neither party made reference to an

opinion letter in its arguments.  After a nine-day trial, the jury found in favor of Knauf.[6]

JM moved for a new trial based on the admission of Exhibit 714.  It claimed

Knauf's admission of the email violated a guiding principle that attorney-client

communications are not to be used as both a sword and a shield: because Knauf relied on

---

[5] "Information that is public knowledge or that is generally known in an industry cannot be a trade secret." *City of Northglenn v. Grynberg*, 846 P.2d 175, 183 (Colo. 1993) (quotation marks omitted).

[6] JM filed suit on March 13, 2015.  Knauf claimed JM's suit was barred by the three-year statute of limitations because (1) JM knew by June 2007 that Johnson was working for Knauf and (2) JM knew by November 2011 that Knauf had ordered its last discs from Owens Corning and had developed its own alloy.  The jury rejected Knauf's statute of limitations defense; it is not an issue in this appeal.

the attorney-client privilege to prevent discovery of the substance of the confidential opinion letter (shield), it could not rely on either the substance or existence of the opinion letter to defend against the misappropriation claim at trial (sword). Although JM acknowledged that Knauf had removed any references to the opinion letter from the email prior to submitting it to the jury, it nevertheless argued the email relayed, sotto voce, the substance of counsel's opinion in the form of Johnson's opinion. Moreover, Knauf essentially told the jury that the term "free to practice" was a legal opinion by associating that term in Johnson's email with Exhibit 1261, a slide presentation presented by Johnson to his Knauf colleagues in June 2008 concerning Knauf's spinner disc development program. One of the slides, labeled "Legal," contained the following bullet points:

· All Vendors Signed New NDA [Non-Disclosure Agreements]

· Electron Beam Drilling – Free to Practice

· Investment Casting of Spinners – Free to Practice

· Three (3) Potential Alloys – Free to Practice

—Designed Experimental Alloys – Free to Practice

(Appellants' App'x Vol. 2 at 338.) As JM would have it, by linking Exhibit 1261 with the language of Johnson's email ("free to practice"), Knauf essentially told the jury that Johnson's email conveyed a legal conclusion uttered by a lawyer.

The district judge denied the motion. He decided the admission of the email was expressly permitted by the parties' pretrial stipulation:

It is true that the parties agreed that Knauf would not "imply, suggest, or indicate in any way that the Opinion of Counsel exists," and would not "introduce any exhibit that references or implies the existence of the Opinion of Counsel." However, Knauf did not violate this portion of the stipulation, since it never used or referenced an opinion of counsel. Instead, as it was permitted to do according to the last sentence in the stipulation, Knauf introduced an "exhibit[] or testimony regarding Dr. Johnson's representations that [GX-4] . . . [was] 'free to practice,' . . . without referring to the Opinion of Counsel." Given the clear language of the stipulation, JM should have prepared for trial with the understanding that Knauf would rely on Dr. Johnson's email after redacting its references to the opinion of counsel, exactly as Knauf did.

(Appellants' App'x Vol. 2 at 329 (citations omitted).) And he rejected JM's argument concerning Exhibit 1261, concluding it "stretches credulity":

For one thing, even if a juror had independently made the connection between Exhibits 714 and 1261 at trial (which seems unlikely given the tenuous thread between them . . . .), it is not evident that a reasonable juror would believe the statements in Exhibit 1261 were necessarily the opinions of counsel. During his testimony introducing Exhibit 1261, Dr. Johnson explained his understanding of the basis for the conclusion "free to practice" on the slide. He indicated that he "imagined it was" a legal opinion with respect to "electron beam drilling;" that for the "investment casting of spinners" the conclusion was "experience based;" and that for the alloys the conclusion "was a combination of experience and legal opinion." The jury was thus presented with a non-lawyer's speculation that a legal opinion was potentially a factor in reaching the conclusion "free to practice." If the conclusion had instead been presented in a legal memorandum or clearly ascribed to counsel, for example, JM's argument might have more merit. However, as it stands, there is no clear indication that the "free to practice" notations in the slide deck were opinions of counsel.

(*Id*. at 332-33 (citations omitted).) "The bottom line," according to the trial judge, "is that even if I were to assume for the sake of argument that the one memo might have changed the outcome of a lengthy and complex trial, I do not find that Knauf failed to comply with the parties' stipulation." (*Id*. at 334.)

JM here tells us the judge erred in admitting Exhibit 714 and denying a new trial.

Our review on those points is for abuse of discretion. *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1308 (10th Cir. 2015) (new trial); *Gallardo v. United States*, 752 F.3d 865, 880 (10th Cir. 2014) (admission of evidence). The judge's interpretation of the parties' stipulation is, like all contracts, reviewed de novo. *Stafford v. Crane*, 382 F.3d 1175, 1180 (10th Cir. 2004).

JM repeats the arguments it made below. It again claims Knauf improperly used counsel's opinion as both a sword and a shield. *See Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1277–78 (10th Cir. 2014) ("[A]llowing [a party] to rely on [the] advice of counsel . . . while excluding the contents of that advice would violate the well-established principle that attorney-client communications cannot be used both as a sword and a shield." (quotation marks omitted)); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995) (same). But again, it concedes, as it must, that counsel's opinion letter (or even the existence of a lawyer's opinion) was never submitted to the jury, none of the witnesses overtly referenced the opinion of counsel, and neither party mentioned an opinion of counsel in its arguments. JM's argument is more nuanced. It says: Knauf refused to disclose the contents of counsel's opinion, citing the attorney-client privilege. It nevertheless exposed the fact that an opinion of counsel exists through Exhibit 714, which, in effect, disguised counsel's opinion that GX-4 was free to practice as Johnson's independent opinion. Knauf then used Exhibit 1619 and other testimony to unveil the disguise. According to JM, it never stipulated to a charade but rather that any reference to the contents of counsel's opinion relating to the GX-4 formula would be prohibited. In

- 9 -

sum, as JM would have it, Exhibit 714 refers to the contents of counsel's opinion, thinly disguised as Johnson's own opinion. Because Knauf invoked the attorney-client privilege to protect discovery of counsel's opinion, it was improper for it to rely on it at trial (as the judge warned).

JM's "disguise" argument is a stretch, as the jury was never made aware of a legal opinion, *see supra* at 6. Nevertheless, we recognize the subtleties of its argument. But we, like the trial judge, conclude it flies in the face of the parties' stipulation.

The first sentence of the stipulation prohibited any Knauf witness from referring "to the . . . contents of any opinion of counsel that relates to or references Knauf's RM-4 alloy provided by Dr. Johnson to Knauf including the opinion letter." (Appellants' App'x Vol. 1 at 131.) However, it went on: "*Notwithstanding the above*, exhibits or testimony regarding Dr. Johnson's representations that RM-4 or other technologies were 'free to practice' . . . may be offered without referring to the Opinion of Counsel." (*Id.* (emphasis added).) Exhibit 714 clearly falls within this latter provision—it is an "exhibit[] . . . regarding Dr. Johnson's representations that RM-4 . . . [was] 'free to practice'" and it was "offered without referring to the Opinion of Counsel."

JM acknowledges this provision but says Exhibit 714 is not an exhibit regarding Johnson's representations that RM-4 was 'free to practice' but rather Johnson's self-serving repetition of counsel's opinion. According to JM, there were no exhibits at the time the parties entered into the stipulation and there has never been an exhibit regarding Johnson's representation that RM-4 was free to practice because Johnson himself never

made such representation; he only relayed the opinion of counsel. It claims, therefore, that it could not have addressed Exhibit 714 in the stipulation because it did not exist at that time.

The judge correctly rejected this argument for two reasons. First, he decided:

> As is evident from language of the stipulation, . . . the parties did not agree that only exhibits regarding Dr. Johnson's *independent analysis* could be offered, but instead they stipulated that *any exhibits* regarding his representation to that effect were admissible. Exhibit 714 fits that description, so JM may not now renege on its stipulation by imposing stricter requirements on Dr. Johnson's statement.

(Appellants' App'x Vol. 2 at 331 (citation omitted).) Second, JM admitted that Exhibit 714 was the only document in the record that was both sent by Johnson and which claims that the JM's GX-4 alloy was free to practice. The last sentence of the stipulation "would [therefore] be meaningless if it did not apply to the concededly singular piece of evidence conveying Dr. Johnson's statement." (*Id*. at 331.) "Given the clear language of the stipulation, JM should have prepared for trial with the understanding that Knauf would rely on Dr. Johnson's email after redacting its references to the opinion of counsel, exactly as Knauf did . . . . JM cannot in good faith argue that it was surprised or disadvantaged by the use of the [redacted email] at trial."[7] (*Id*. at 329.)

---

[7] To the extent JM believed Exhibit 714 was not covered by the parties' stipulation, it should have said so prior to trial and sought to be relieved of it. While it objected to Knauf's use of the exhibit during its opening statement and again to its admission at trial, it never argued it was not covered by the stipulation. Even its objection to its admission at trial was equivocal as to whether its objection stemmed from the email being based on the (redacted) opinion of counsel or rather because JM "didn't want a piece of paper in the record that's written [as opposed to oral] where Dr. Johnson says . . . we are free to practice the RM-4 composition." (Appellants' App'x Vol. 5 at 432.)

- 11 -

JM's argument concerning Exhibit 1261 fares no better.  The judge, who presided over the trial and is in the best position to address the matter, found it unlikely a juror would have made the connection between Exhibit 714 and Exhibit 1261 given the tenuous thread between them.  *Cf. Whittenburg v. Werner Enter. Inc.*, 561 F.3d 1122 (10th Cir. 2009) ("[b]ecause the presiding trial judge is present in the courtroom throughout the proceedings, he or she is uniquely positioned to assess" the prejudicial effect of improper arguments and whether to grant a new trial).  Moreover, it does not follow that because the term "Free to Practice" was found under the slide labeled "Legal," that the term "Free to Practice" in that slide must have resulted from a legal opinion.  Rather, in context, the label "Legal" seems to refer to legal issues/concerns regarding Knauf's spinner disc development program.  In any event, Johnson testified that the "Free To Practice" conclusion as to each item listed on the slide was either experience-based, a legal opinion, or both and, relevant here, he stated the conclusion for the alloys was based on a combination of experience and legal opinion.  As a result, even if the jury made the requisite connection between Exhibits 714 and 1261, all it could conclude as to Exhibit 714 is that its reference to the GX-4 formula being free to practice was possibly based (at least in part) on a legal opinion.

As a last straw, JM complains "the stipulation never provided for manufacturing exhibits that previously did not exist" and "in no way contemplated that Knauf would create faux evidence and circumvent the stipulation by altering a document that in its true form was unambiguously excluded by the stipulation."  (JM's Reply Br. at 11.)  It has a

point. The jury was not aware that redactions were made to the April 20, 2010 email. It was presented to the jury as if the opinion was that of Johnson[8] (which the stipulation clearly envisioned) when, in fact, those receiving the email most likely took it be the independent opinion of counsel. *Compare* Appendix B (the original email) *with* Appendix C (Exhibit 714, the version of the email submitted to the jury). Yet, each of the recipients testified as if it was Johnson's own opinion. The problem for JM is that it expressly and unambiguously agreed to the creation and admission of Exhibit 714. Why it chose to do so is beyond our ken.[9] *See L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 540 (10th Cir. 1983) ("[I]t is not our function to review the content of stipulations to decide their relative worth; attorneys stipulate many things for many reasons in preparation for and in the course of trials."). We are, therefore, "reluctant to relieve parties from the benefits, or detriments, of their stipulations," especially where, as here, JM was represented by counsel and there is no indication JM did not "voluntarily and freely" agree to the stipulation.[10] *Id*. at 539-40.

To be clear, we now summarize our holding: We agree with the trial judge's interpretation of the parties' stipulation. We have carefully considered JM's delicately

---

[8] JM never objected to Johnson's competence to utter such an expert opinion.

[9] So too is JM's decision to dismiss Johnson in exchange for his testimony.

[10] Most of Knauf's brief argues that any error in admitting Exhibit 714 was harmless because it presented substantial evidence, other than Exhibit 714, showing that the GX-4 formula was not a trade secret. Because we find no error in the admission of Exhibit 714, we need not address harmless error.

- 13 -

crafted argument about the opinion of counsel masquerading as Johnson's opinion and cannot summarily dismiss it as lacking merit. On the other hand, it is insufficient, as a matter of law, to call the jury's verdict into question, leaving the trial judge's assessment of the effect of Exhibits 714 and 1261 on the verdict as preeminent. He clearly, although not expressly, concluded there was no effect in a complex trial spanning nine days.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

# APPENDIX A

———

**From:** Twyman, Garla [mailto:Garla.Twyman@btlaw.com]
**Sent:** Tuesday, April 20, 2010 5:11 PM
**To:** JOHNSON Walt
**Subject:** Analysis - Freedom to Operate Inquiry of a Cobalt-Based Alloy (Our Matter: 20121-210854)

Dear Mr. Johnson;

Attached please find a letter from Brad Addison regarding the analysis requested.  Please let us know if you have any questions regarding the attached letter.

Best regards,

Garla

From:      JOHNSON Walt
Sent:      Tue 4/20/2010 8:15 PM (GMT-04:00)
To:      RUBRIGHT Kent; WLODARCZYK Paul; NICHOLSON Paul
Cc:      BEYER Amy; BREWINGTON Mike; BROWNELL Steven; PEREIRA Jon
Bcc:
Subject:      FW: Analysis - Freedom to Operate Inquiry of a Cobalt-Based Alloy (Our Matter: 20121-210854)
Attachments: Confidential - Opinion Letter.pdf

Kent and Paul(2),

We are free to practice the RM4 (Co-Cr-Ni-Mo-C) composition.

Best regards,

    Walt

_____

**From:** Twyman, Garla [mailto:Garla.Twyman@btlaw.com]
**Sent:** Tuesday, April 20, 2010 5:11 PM
**To:** JOHNSON Walt
**Subject:** Analysis - Freedom to Operate Inquiry of a Cobalt-Based Alloy (Our Matter: 20121-210854)

Dear Mr. Johnson;

Attached please find a letter from Brad Addison regarding the analysis requested. Please let us know if you have any questions regarding the attached letter.

Best regards,

Garla

ATTORNEYS EYES ONLY      KI20792147

# APPENDIX C

---

From:       JOHNSON Walt
Sent:       Tue 4/20/2010 8:15 PM (GMT-04:00)
To:         RUBRIGHT Kent; WLODARCZYK Paul; NICHOLSON Paul
Cc:         BEYER Amy; BREWINGTON Mike; BROWNELL Steven; PEREIRA Jon
Bcc:
Subject:

Kent and Paul(2),

We are free to practice the RM4 (Co-Cr-Ni-Mo-C) composition.

Best regards,

    Walt

---

**DEFENDANTS'
EXHIBIT
714**

Aplt. App. 335

KI20792147