752 F.2d 492
 17 Fed. R. Evid. Serv. 588
 Deon HIGGINS, Nelson Schock, James Higgins, Howard Higgins,
Jerry Higgins, and Michele Higgins, Plaintiffs-Appellants,
v.
MARTIN MARIETTA CORPORATION and The United States of
America, Defendants-Appellees.
 Nos. 82-2073 to 82-2081.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 9, 1985.
 
 1
 Roger M. Theis and John W. Johnson, Wichita, Kan. (Albert L. Kamas, Wichita, Kan., also on briefs), for plaintiffs-appellants.
 
 
 2
 Phyllis Jackson Pyles, U.S. Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., and Jeffrey Axelrad, U.S. Dept. of Justice, Washington, D.C., Jim J. Marquez, U.S. Atty., and Sharon Werner, Asst. U.S. Atty., Wichita, Kan., also on brief), for defendant-appellee U.S.
 
 
 3
 Payne H. Ratner, Jr., Wichita, Kan. (E.L. Lee Kinch, Wichita, Kan., also on brief), for defendant-appellee Martin Marietta Corp.
 
 
 4
 Before BARRETT and LOGAN, Circuit Judges, and FINESILVER, District Judge.*
 
 
 5
 SHERMAN G. FINESILVER, District Judge.
 
 
 6
 This personal injury case arose from an accident occurring at a Titan II missile silo near Rock, Kansas on August 24, 1978. Plaintiffs filed suit against the Defendant United States of America under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b), Secs. 2671, et seq. They alleged personal injury resulting from the government's negligence at the silo on the day of the accident.
 
 
 7
 Suit was filed against Defendant Martin Marietta Corporation alleging negligent design and construction of the Titan II facility. Liability was predicated on theories of product liability and filed pursuant to 28 U.S.C. Sec. 1332.
 
 
 8
 At trial, the jury returned special verdicts in favor of the Defendants. Plaintiffs appeal this result claiming several evidentiary errors as well as errors in the jury instructions. We affirm judgment for the Defendants.
 
 I.
 
 9
 On the day in question, a large cloud of toxic nitrogen tetroxide gas escaped into the air during a routine refueling procedure. The gas diffused over the countryside, exposing local residents in the process. The silo was operated by the United States Air Force. The missile was generally designed and manufactured by Martin Marietta Corporation.
 
 
 10
 Exposure to nitrogen tetroxide gas causes certain types of symptomatology. When combined with moisture it becomes nitric acid. The effects of inhaling the gas include pulmonary edema and bronchiolitis.
 
 
 11
 Plaintiff, Nelson Schock, was employed by, and covering the Titan II story for, radio station KFDI in Wichita, Kansas the day of the accident. He spent several hours near the site, observing the brownish-orange cloud as it dissipated. At the time he experienced dry throat, runny nose and eye irritation. At trial, Mr. Schock claimed he suffered injuries including chest congestion, shortness of breath and throat irritation. These maladies amounted to a chronic pulmonary condition requiring daily treatment and medication.
 
 
 12
 The Plaintiffs, the Higgins family, claimed they were exposed to the gas as it passed over the area where they live. The family suffered eye, nose and throat irritation upon exposure. For several months after the accident the family members claimed to experience upper and lower respiratory problems and throat and eye problems in varying degrees of severity.
 
 
 13
 The trial was bifurcated on the issues of liability and damages. As the end of the liability trial approached, the parties reached a settlement concerning liability. The Defendants apportioned liability among themselves for the accident. A trial to a jury addressing the damages claims commenced July 20, 1981 and continued for four weeks. Special interrogatories were utilized by the trial court. The first interrogatory asked the jury to determine if the Plaintiffs had been exposed to the nitrogen tetroxide gas. The second interrogatory asked them to determine if, given the Plaintiffs had in fact been exposed, they had been damaged. As to Nelson Schock, the jury found he had been exposed to the gas but suffered no injury as a result. The jury determined that no one in the Higgins family had been exposed.
 
 II.
 
 14
 The following points are urged by Plaintiffs for reversal. First, the admission of testimony by General Thomas P. Stafford absent his medical records and the refusal of the trial court to give a jury instruction regarding the missing records. Second, the Plaintiffs contest the trial court's failure to give a jury instruction on the aggravation of a preexisting condition. Third, Plaintiffs claim reversible error occurred when the trial court allowed allegedly prejudicial hearsay regarding Mr. Schock, that referenced workman's compensation issues, to be read to the jury. Finally, Plaintiffs seek reversal on the following issues: the denial of adequate cross examination of one of the Defendants' medical experts due to the failure to produce his reports, a reference to the Plaintiffs' counsel's alleged solicitation of the case, and the prohibition by the trial court of Plaintiffs' cross examination regarding the condition of other plaintiffs not involved in the present action.
 
 III.
 
 15
 The central issue on appeal revolves around the testimony of General Thomas P. Stafford (retired), a former NASA astronaut and nationally known in the space and aeronautical fields. General Stafford and his crew were exposed to nitrogen tetroxide in their space capsule upon reentry into the Earth's atmosphere on the Apollo-Soyuz space mission in July of 1975. The Defendants called General Stafford as a witness to testify as to the effects of the exposure.
 
 
 16
 Several procedural and evidentiary issues concerning General Stafford arose during trial. The Plaintiffs received notice that General Stafford would be called to testify as a defense witness when the witness summary of testimony was submitted by the Defendants at the beginning of the government's case. Court and counsel withdrew to court chambers to discuss the testimony of this witness and others. Plaintiffs requested the medical records of the witness be produced if in fact the witnesses were to testify. The court merely agreed that this would make sense. No order for production ever issued.
 
 
 17
 When General Stafford arrived to testify, he was allowed to take the witness stand immediately. This was in deference to the busy schedule of the witness. Prior to commencing examination, Plaintiffs' counsel addressed their concerns that General Stafford had not brought his medical records. The court determined that the witness could testify as to what he understood as to the present condition of his health. At one point in the testimony, Plaintiffs' counsel objected to what they considered to be an interpretation by the General of his physical examination. The following dialogue occurred:
 
 
 18
 MR. KAMAS: Your Honor, we are goint [sic] to object to this. We know the Court ordered him to bring those physicals with him and he did not. I object to him interpreting his physical examination. He's not a doctor.
 
 
 19
 THE COURT: It is for the jury to know when I was apprised that this gentleman would come on, I think about the time Dr. Daum had suggested that review of his--the witnesses records might reveal some pathology, I did suggest then and require that if we are going to have the witness on and allude to his medical condition that he should have his records. I have learn [sic] today that he is coming and he doesn't have his record and I'm sure through no fault of his own. They are at NASA; and in light of that, permitted of course the witness to testify as to whatever else we have. As a consequence I'm not going not going [sic] to let the General testify what is his diagnosis of such, but last question is to your knowledge, General, do you have any problem is a fair question and he can answer.
 
 
 20
 Q That's why I phrased it that way, Your Honor.
 
 
 21
 THE COURT: Your overruled, Mr. Kamas?
 
 
 22
 A Your Honor, when you finish the physical you have a complete debriefing as to what your cardiovascular function, pulmonary function, any neurologic efforts and any neurologic abnormality, sir, and I have been completely normal. In other words, the doctor team that examines me has briefed me each time and I have been perfectly normal. Been no abnormalities, sir. That was their evaluation of me and my medical records are all at Houston. I was not aware that I was supposed to go down and get them.
 
 
 23
 (Vol. 52, p. 2852-53).
 
 
 24
 The court allowed the testimony with a cautionary statement to the jury explaining the absence of the medical records and how that must restrict the testimony of the General. Our close reading of the transcript indicates full and complete cross exaamination of General Stafford. We reject the contention that the absence of the records denied Plaintiffs adequate cross examination.
 
 
 25
 On another related point, Plaintiffs tendered a jury instruction to the effect that if a party has failed to offer evidence or produce witnesses, you may infer the evidence would have been adverse. The instruction was primarily directed to the failure to produce the medical records of General Stafford. The instruction was refused by the trial court. The court determined that the Plaintiffs had sufficient notice of the testimony and an adequate advance summary of the testimony of the witness. No prejudice resulted from the refusal of the instruction.
 
 
 26
 An analogy to well settled principles of criminal law regarding the effect of lost or destroyed evidence is instructive. Courts approach the problem by evaluating the culpability of the party in the loss of the evidence and the significance of that evidence. United States v. Grammatikos, 633 F.2d 1013 (2d Cir.1980); United States v. Bryant, 439 F.2d 642 (D.C.Cir.1971). Courts also examine all circumstances of the case to determine if bad faith or intentional destruction of evidence occurred. United States v. Beathune, 527 F.2d 696 (10th Cir.1975), cert. denied, 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976).
 
 
 27
 Although not dealing with lost or destroyed evidence per se, we do have a situation where evidence is unavailable at the time of the witness' testimony. Viewing the culpability of the Defendants, it is clear that the absence of General Stafford's medical records was not a result of bad faith. Weighing this factor with the apparently minor significance of the records of one witness out of many during the course of a four week trial, there is no support for a finding of reversible error.
 
 
 28
 The refusal to give the negative inference instruction was within the sound discretion of the trial court. Viewing the instructions as a whole, no prejudice resulted. See Rexrode v. American Laundry Press Co., 674 F.2d 826 (10th Cir.), cert. denied, 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982).
 
 IV.
 
 29
 Plaintiffs contend that the court's refusal to give a jury instruction concerning aggravation of a preexisting condition constitutes reversible error. This tendered instruction was directed at the health condition of Nelson Schock and the effects of the nitrogen tetroxide on that condition.
 
 
 30
 Originally, the Plaintiffs' theory of the case was based upon direct causation premises; attributing Mr. Schock's condition entirely to the nitrogen tetroxide exposure. Defendants presented evidence that the condition could have been allergic in origin and not the result of exposure to the gas. Relying on the evidence submitted primarily by the Defendants, Plaintiffs sought to introduce an aggravation instruction. They argued substantial evidence existed for the jury to conclude a preexisting condition existed which was aggravated by the exposure. Defendants counter this argument by claiming substantial evidence does not exist and the Plaintiffs did not raise aggravation as a theory during pretrial or at trial itself.
 
 
 31
 We recognize the principle that a party is entitled to an instruction of their theory of the case only if the theory is supported by competent evidence. Lupton v. Torbey, 548 F.2d 316 (10th Cir.1977); Hartman v. Miller Hydro Co., 499 F.2d 191 (10th Cir.1974). The evidence introduced at trial must warrant the giving of the instruction. When dealing with an issue of medical causation, a considered medical judgment is necessary, expressed in terms of probability rather than possibility. See, e.g., Fitzgerald v. Manning, 679 F.2d 341 (4th Cir.1982); Bearman v. Prudential Insurance Co., 186 F.2d 662 (10th Cir.1951).
 
 
 32
 Testimony of Defendants' medical experts regarding Mr. Schock's respiratory disorders before and after the accident do not support the giving of the instruction. In sum, no substantial evidence of aggravation of a preexisting condition exists to warrant the instruction. The trial court correctly refused the instruction.
 
 V.
 
 33
 An additional issue on appeal involves the reference to notations and entries in the medical records of Mr. Schock. During cross examination of Mr. Schock, a letter written by one of his treating physicians, Dr. Drevets, was read. At various times during testimony, including the references to this letter, the evidence alluded to the fact that Mr. Schock's respiratory problems could have been caused by aspiration of a piece of popcorn causing infection rather than exposure to the gas. The letter stated in part: "I do not understand why Nelson would come on about the popcorn story if he really and truly thought he had inhaled some noxious fumes on the job. He is obviously trying to get this job related...." (Vol. 40, p. 1611-12). The letter was part of the medical records of the Plaintiff, and the entire record was already admitted into evidence. Plaintiff objected to the reading of the statements in this letter. The objection primarily addressed the workman's compensation implications of the evidence.
 
 
 34
 The Plaintiff now addresses three concerns as to this evidence. First, it is inadmissible hearsay. Second, the statement's prejudicial effect outweighed its probative value. Third, the evidence impermissibly referred to a workman's compensation-collateral source issue.
 
 
 35
 The first issue as to the hearsay problems of this evidence is without merit. The letter had previously been admitted into evidence. We are of the opinion such information falls within the ambit of Rule 803(6) of the Federal Rules of Evidence, the business records exception to the hearsay rule. Apparently, this kind of correspondence is regularly kept in the course of this physician's business. In dealing with Rule 803(6), discretion lies in favor of admission. See, e.g., United States v. Sackett, 598 F.2d 739 (2d Cir.1979).
 
 
 36
 Secondly, the Plaintiffs argue the prejudicial effect of the admission of the letter outweighed its probative value and therefore the evidence should have been excluded under Fed.R.Evid. 403. But, absent abuse of discretion by the trial court, the determination of the balance to be struck in these matters will not be disturbed on appeal. Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509 (10th Cir.), cert. granted, --- U.S. ----, 105 S.Ct. 562, 83 L.Ed.2d ---- (1984); Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561 (10th Cir.1978); Rigby v. Beech Aircraft Co., 548 F.2d 288 (10th Cir.1977). We are of the view that the trial judge, the one most familiar with the evidence before the court, struck the proper balance and correctly admitted the evidence, at least with regard to Rule 403 considerations.
 
 
 37
 The third concern of the Plaintiffs on the admission of these statements is the workman's compensation issue. Clearly, reference during trial to the Plaintiff's receipt of collateral benefits is not allowed. Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); Tipton v. Socony Mobile Oil Co., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). These statements did not refer to a collateral source per se. They were introduced by the Defendants for the purpose of showing Mr. Schock did not contend that he was exposed to the nitrogen tetroxide until he decided to file a workman's compensation claim fourteen months after the accident in October of 1979. The evidence went to the Plaintiff's credibility.
 
 
 38
 To protect Plaintiff from any possible prejudice due to the workman's compensation reference, the trial judge gave the following cautionary instruction to the jury.
 
 
 39
 THE COURT: I asked the lawyers to come up to clarify what I wanted to tell you, members of the jury. You might recall shortly before lunch they came up. I had advised all the lawyers in advance of this trial that worker's compensation, whether it had been paid or not paid to the plaintiff was irrelevant in this case.
 
 
 40
 Experience tells us that when jurors know someone has received benefits from some third source, they may take that into account as they would assess damages. Should you find for the plaintiff in this case you might have done that.
 
 
 41
 So there was no mention of it. It is wholly irrelevant to this case. Now, it happens that Miss Werner wanted to address certain entries in the record for other reasons which confronted the question of worker's compensation. I permitted her to do that, so worker's compensation is now mentioned before you.
 
 
 42
 You should disregard any aspect of it, and, more than that, I have been advised by all the litigants that none were ever paid anyhow, so it is wholly irrelevant to this case. I thought I would--now is the time to make that comment, and we will move on an [sic] forget any part of the worker's comp. That is not to say you need to ignore the purposes of the testimony or the cross examination of Miss Werner. All right.
 
 
 43
 (Vol. 40, p. 1619-20).
 
 
 44
 This instruction cured any potential prejudice to the Plaintiffs arising from the admission of the statements.
 
 VI.
 
 45
 Several additional issues have been raised by the Plaintiffs. One issue involves the failure of the Defendants to provide the reports of defense expert Dr. deTreville thus preventing adequate cross examination by Plaintiffs. Second, the Plaintiffs allege defense counsel deliberately elicited an answer from a witness, Colonel Gray, to the effect Plaintiffs' counsel solicited this lawsuit from one of the Plaintiffs in a separate action arising from the same accident. Both of these matters were not objected to at trial, therefore, the trial judge had no opportunity to rule on the issues. An objection cannot be raised for the first time on appeal. Christiansen v. Farmers Insurance Exchange, 540 F.2d 472 (10th Cir.1976); Lumbermens Mutual Casualty Co. v. Rhodes, 403 F.2d 2 (10th Cir.1968), cert. denied, 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567 (1969). For this reason, we do not address these issues on appeal.
 
 
 46
 Finally, Plaintiffs contend the trial judge erred in prohibiting cross examination of defense witness, Dr. Braun, regarding the results of his examination of other plaintiffs who were not parties in the suits before the jury. The reason for preventing this cross examination was that it exceeded the scope of the direct examination. Fed.R.Evid. 611(b). We find no error in the ruling of the trial judge.
 
 VII.
 
 47
 During a lengthy trial, the judge must make numerous rulings on evidence. Of necessity, these rulings must be made without any advance notice. Deference must be given to the trial judge who is most familiar with the circumstances surrounding the issues in question. "The trial court's conduct of trial proceedings, including rulings on motions and objections, will not be disturbed on appeal unless it affirmatively appears from the record that the trial court abused its discretion." Rasmussen Drilling v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.), cert. denied, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). See also L.P.S. by Kutz v. Lamm, 708 F.2d 537 (10th Cir.1983).
 
 
 48
 A jury verdict will only be set aside if manifest error affecting a substantial right of a party occurs or the litigant is deprived of a fair trial. See, e.g., Beacham v. Lee-Norse, 714 F.2d 1010 (10th Cir.1983). Providing substantial evidence supports the factual issues decided adversely to a party by a jury, they will not be disturbed on appeal. Glasscock v. Wilson Constructors, Inc., 627 F.2d 1065 (10th Cir.1980).
 
 
 49
 Overall, the evidence presented must be reviewed in the light most favorable to the prevailing party. See Malandris v. Merrill, Lynch, Fenner and Smith, 703 F.2d 1152 (10th Cir.1981), cert. denied, --- U.S. ----, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); Miller v. City of Broken Arrow, Oklahoma, 660 F.2d 450 (10th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982).
 
 
 50
 No manifest error affecting a substantial right of a party is found in the record. Substantial evidence supports the determination of the factual issues. A review of the jury instructions as a whole reflects no prejudice. We find no error in the instructions as given nor the trial court's refusal of tendered instructions.
 
 
 51
 For the reasons stated, the judgment is AFFIRMED.
 
 
 
 *
 Honorable Sherman G. Finesilver, Chief Judge for the United States District Court for the District of Colorado, sitting by designation