UNITED STATES of America, Plaintiff–Appellee,

v.

Patrick LEE, Defendant–Appellant.

No. 94–1164.

United States Court of Appeals, Tenth Circuit.

April 27, 1995.

Charlotte J. Mapes, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., Kyra Jenner, Asst. U.S. Atty., on the briefs), Denver, CO, for plaintiff-appellee.

Warren R. Williamson, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, CO, for defendant-appellant.

Before BRORBY, GODBOLD * and HOLLOWAY, Circuit Judges.

BRORBY, Circuit Judge.

The defendant, Patrick Lee, appeals his conviction for equity skimming, aiding and abetting, and mail fraud arguing the jury was improperly instructed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## BACKGROUND

Beginning in September 1988 and continuing through March 1990, Mr. Lee, in conjunction with his codefendant, Douglass Nelson, purchased twenty-three townhomes and condominiums by assuming non-qualifying Federal Housing Authority loans insured by the Department of Housing and Urban Development ("HUD").[1] Mr. Lee convinced many of the individual sellers to convey their property to him by presenting his credit report, indicating he had a guaranteed income from the Veterans' Administration, and falsely stating his intent to occupy the homes personally.

---

* The Honorable John Cooper Godbold, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

1. The HUD program enabled purchasers to assume existing loans on property without qualifying for new loans, simply by transferring the existing mortgages from the seller to the purchaser for a $45 transfer fee, provided the mortgage payments were paid up-to-date at the time of assumption.

Shortly after Mr. Lee purchased each property, it was transferred to Mr. Nelson by warranty deed. Mr. Nelson insisted such transfers take place as soon as possible so that the loans were current in order to minimize the number of mortgage payments that Mr. Nelson would have to make. Subsequently, the properties were rented under the direction of Mr. Nelson and rent proceeds collected, but no mortgage payments were made on the properties. The proceeds were distributed to a number of people, including Mr. Lee, and used for personal expenses. Mr. Nelson admitted at trial he never had any intention of making mortgage payments on the properties. The mortgages on the twenty-three properties went into default within one year of purchase; all of the properties were foreclosed; and HUD incurred losses in the neighborhood of $900,000 as a result.

The government filed a five-count indictment against Mr. Lee. Count I charged equity skimming and aiding and abetting in violation of 12 U.S.C. § 1709–2 and 18 U.S.C. § 2. Counts II, III, IV, and VI charged mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 and 2. A jury found Mr. Lee guilty of Counts I and VI and acquitted him on counts II, III, and IV.

## DISCUSSION

■■■■ Mr. Lee argues the district court erred in three respects regarding jury instructions. We review the district court's refusal to give a particular jury instruction for abuse of discretion. *United States v. Vasquez,* 985 F.2d 491, 496 (10th Cir.1993). In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. *Id.* The question of whether a jury was properly instructed is a question of law, and thus, our review is *de novo.* *United States v. Joe,* 8 F.3d 1488, 1500 (10th

Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994).

### A.

■■■ The crime charged in Count I is violation of 12 U.S.C.A. § 1709–2 (1989), which provides, in pertinent part:

Whoever, with the intent to defraud, willfully engages in a pattern or practice of—

(1) purchasing one- to four-family dwellings ... which are subject to a loan in default at the time of purchase or in default within one year subsequent to the purchase and the loan is secured by a mortgage or deed of trust insured or held by the Secretary of Housing and Urban Development ...,

(2) failing to make payments under the mortgage or deed of trust as the payments become due, regardless of whether the purchaser is obligated on the loan, and

(3) applying or authorizing the application of rents from such dwellings for his own use,

shall be fined not more than $250,000 or imprisoned not more than 5 years, or both.

Mr. Lee argues the district court should have instructed the jury according to his proposed jury instruction number 23 which apparently[2] provided that in order to find Mr. Lee guilty of equity skimming, the government must prove he knew or intended, at the time the properties were purchased, that: (1) the mortgages would not be paid; (2) the properties would be rented; and (3) the rental income from the properties would be applied to personal use. As we understand it, Mr. Lee argues instruction 23 is necessary in order to distinguish the crime of equity skimming from that of simple or generic fraud.

18 U.S.C.A. § 1341 (1984), the general, federal fraud statute, provides in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by

---

**2.** We note that while Mr. Lee has referred this court to volume 1, document 13, instruction 23, as the instruction at issue, no such instruction appears in the record. Nevertheless, because both parties are in agreement as to the substance of that instruction and because the district court ruled on this instruction, we are able to review this allegation of error based on the record before us.

means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office ... any matter or thing whatever to be sent or delivered ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

In contrast, the federal equity skimming statute prohibits willfully engaging in a pattern or practice of purchasing one-to four-family dwellings that are secured by mortgages or deeds of trust insured or held by the Secretary of Housing and Urban Development, failing to make payments on the mortgage, and applying or authorizing the application of rents from such dwellings for his own use, with the intention to defraud.

Thus, it is perfectly clear while many acts of equity skimming could amount to simple fraud (equity skimming requires the intention to defraud though not the use of the post office in furtherance of that intent), not all acts of simple fraud are equivalent to equity skimming (one can defraud without acquiring federally insured dwellings, failing to make mortgage payments, or misappropriating rental proceeds). As such, instruction 23 is not necessary to distinguish equity skimming from generic fraud.

Moreover, reviewing the instructions tendered as a whole, it is clear instruction 23 simply would have been redundant; adding nothing to what the tendered instructions required. The jury was instructed:

> In order to sustain its burden of proof for the crime of equity skimming as charged in Count 1 of the indictment, the government must prove the following six elements beyond a reasonable doubt. First, the government must prove that the defendants engaged in a pattern or practice of purchasing one to four family dwellings. Second, it must prove that the defendants acted willfully in engaging in this practice of purchasing one to four family units. Third, it must prove that the dwellings were secured by a mortgage insured by the Secretary of Housing and Urban Development or the Veterans Administration. Fourth, it must prove that the defendants failed to make payments when due,

and the loan was in default or came into default within one year from the date of purchase. Fifth, it must prove that the defendants applied the rents from such dwelling to their own use. Sixth, it must prove that the defendants engaged in this conduct with the intent to defraud.

This instruction tracks, nearly word for word, the language of § 1709–2 and necessarily includes each and every element of the crime of equity skimming as it has been defined by Congress. With respect to the mens rea required to prove the crime of equity skimming, the instruction specifically required the government to carry its burden of proving Mr. Lee acted "with the intent to defraud." In a separate instruction, the court defined intent to defraud as follows:

> Fraud is an intentional or deliberate misrepresentation of the truth for the purpose of inducing another in reliance on it to part with a thing of value or [t]o surrender a legal right. Fraud then is a deceit which whether perpetrated by words, conduct or silence, is designed to cause another person or institution to act upon the representation or silence to his or her or its legal injury.
>
> A statement, claim or document is fraudulent if it was falsely made or made with reckless indifference as to its truth or falsity, or made or caused to be made with an intent to deceive.
>
> . . . .
>
> ... To act with an intent to defraud, as is required by all of the charges here, means to act knowingly and with the intention or the purpose to deceive or cheat someone. An intent to defraud is accompanied ordinarily by a desire or purpose to bring about some benefit or gain to one's self or some other [person], or by a desire or purpose to cause loss to some other person.

We have previously noted instructions identical or substantially similar to this one properly define the meaning of the phrase "intent to defraud." *E.g.*, *United States v. Hilliard*, 31 F.3d 1509, 1518 (10th Cir.1994); *United States v. Simpson*, 950 F.2d 1519, 1524 (10th Cir.1991), *see also* Devitt et al., *Federal Jury*

*Practice and Instructions,* 4th ed., §§ 16.07 & 16.08.

In order to find Mr. Lee acted with the requisite intent to commit the crime of equity skimming, the jury had to find he purchased the properties in conjunction with Mr. Nelson through deceit, with the desire or purpose to bring about some benefit to himself or another. By requiring that Mr. Lee, in engaging in the pattern or practice defined in § 1709–2, acted with the intent to defraud, these instructions necessarily required a finding Mr. Lee did not purchase the twenty-three properties with innocent intentions:, The intent instruction required a finding that the properties were purchased fraudulently through deception or untruths, for the purpose of bringing about a benefit to Mr. Lee or another. This is essentially what instruction 23 would have required the jury to find. As such, we conclude the substantive content of instruction 23 was conveyed to the jury, and therefore, instruction 23 was simply redundant.

The district court did not abuse its discretion in refusing to instruct the jury according to instruction 23.

### B.

Next, Mr. Lee argues the district court erred in instructing the jury concerning deliberate indifference. The argument is premised on the contention the government presented no evidence to support a finding Mr. Lee consciously avoided knowledge that any of the properties had been foreclosed on or knew Mr. Nelson did not intend to pay the mortgages on the properties.

 A deliberate indifference instruction is appropriate if the defendant denies knowledge of an operative fact and the evidence demonstrates or creates the inference the defendant deliberately avoided actual knowledge of that fact. *United States v. Custodio,* 39 F.3d 1121, 1124–25 (10th Cir. 1994); *United States v. Hilliard,* 31 F.3d 1509, 1514 (10th Cir.1994). Such an instruction is proper "*only* when evidence has been presented showing the defendant purposely contrived to avoid learning the truth." *United States v. de Francisco–Lopez,* 939 F.2d 1405, 1409 (10th Cir.1991). In reviewing whether a deliberate indifference instruction was properly tendered, we view the evidence in the light most favorable to the government. *United States v. Fingado,* 934 F.2d 1163, 1166 (10th Cir.), *cert. denied,* 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991).

In response to Mr. Lee's objection to instructing the jury on the theory of deliberate indifference, the district court reasoned:

> I think that there is some suggestion in Mr. Lee's defense, particularly the reliance on Mr. Nelson and the emphasis on the fact that he didn't know how Mr. Nelson was behaving in failing to pay the mortgages raises issues of deliberate ignorance. . . .
>
> . . . .
>
> . . . The pattern itself raises issues as to whether a reasonable person in his position would have known what Mr. Nelson was doing. It's arguable.[3]

While we agree with the district court the pattern engaged in here raises some suspicion as to whether a reasonable person would have known Mr. Nelson was engaged in equity skimming, that is not the standard to be used in determining whether a deliberate indifference instruction is appropriate. On the contrary, "[t]he evidence must establish that the defendant had subjective knowledge of his criminal behavior. Such knowledge may not be evaluated under an objective,

---

3. The district court instructed the jury:

The government may prove that a defendant acted knowingly by proving beyond a reasonable doubt that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious.

A finding beyond a reasonable doubt of an intent of the defendant to avoid knowledge or enlightenment would permit the jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact may be inferred from a deliberate blindness to the existence of the fact. It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes in this case. It is entirely up to you as to the inferences to be drawn by any such evidence.

You may not infer that a defendant had knowledge, however, from proof of mistake, negligence, carelessness or belief in an inaccurate proposition.

reasonable person test." *de Francisco-Lopez*, 939 F.2d at 1409. As such, the district court erred in evaluating the propriety of giving a deliberate indifference instruction under an objective, reasonableness test. The question remains, however, whether there is sufficient evidence of purposeful and deliberate avoidance of knowledge to support the giving of this instruction. *See Swoboda v. Dubach*, 992 F.2d 286, 291 (10th Cir.1993) (appellate court may affirm the district court's judgment on grounds other than those relied on by the district court).

▮ When viewed in the light most favorable to the government, we conclude substantial evidence was presented from which the jury could reasonably infer Mr. Lee consciously avoided actual knowledge of Mr. Nelson's equity skimming practices. First, the evidence established Mr. Nelson, on a number of occasions, expressed his dissatisfaction with Mr. Lee's failure to transfer property to him as soon as possible. Because these HUD insured properties only could be sold or transferred while the mortgage payments were current, Mr. Nelson explained to Mr. Lee that "I prefer to buy them, you know, a lot sooner than two months after you purchase them. Now, that is two months of payments that I have to make up, and that's not good." While such a sentiment could be consistent with innocent behavior,[4] the jury could reasonably infer Mr. Lee consciously avoided inquiring as to the necessity of a speedy transfer because he did not want to learn Mr. Nelson never intended to pay the mortgages on any of the properties subsequently acquired by Mr. Lee.

Second, a number of tenants of the properties testified they received mail from various mortgage companies addressed to Mr. Lee at their residences. Frequently, the letters contained foreclosure notices addressed to Mr. Lee. The tenants, however, were unable to contact Mr. Lee in order to give these letters to him. Mr. Lee testified, while he never saw the letters, he was confident the tenants had in fact received them. His confidence was based on the nature of the "assumption packages" designed by Mr. Nelson. Mr. Lee testified as to his confidence that the mortgage companies would send information (which, it turned out, contained foreclosure notices) to the properties he had purchased and transferred to Mr. Nelson, but he made no attempt to get those letters or learn of their contents. From this testimony, the jury could reasonably have inferred he was deliberately avoiding knowledge of those letters and their contents. This, in turn, could lead to the inference Mr. Lee sought to avoid knowledge of Mr. Nelson's likely intentions with respect to properties Mr. Lee would acquire in the future.

Finally, the evidence at trial established Mr. Lee was actually aware of the fact two of the properties he had previously transferred to Mr. Nelson had gone into foreclosure.[5]

---

4. For instance, it could be inferred from this that Mr. Nelson simply sought to rent the properties as soon as possible in order to enable him to pay mortgages with rental proceeds. The problem with such an inference in this case, however, is that a number of properties were being rented prior to the time Mr. Lee purchased them and continued to be rented until the time of transfer to Mr. Nelson.

5. At oral argument, counsel for Mr. Lee questioned the significance of this fact to the issue presented. In *de Francisco-Lopez*, 939 F.2d at 1410, this court held,

the same fact or facts cannot be used to prove both actual knowledge *and* deliberate indifference because the two are mutually exclusive concepts. If evidence proves the defendant actually *knew* an operant fact, the same evidence could not *also* prove he was *ignorant* of that fact. Logic simply defies that result.

In a dissenting opinion, Judge Baldock took issue with the majority's reasoning, arguing that "[t]he difficulty with this approach is that it assumes that each circumstantial fact admits only of a single inference, knowledge or ignorance, unaffected by the other facts at trial." (Baldock, J., dissenting). *Id.* at 1414.

This panel, even if it were so inclined, is not at liberty either to overrule or ignore the holding of *de Francisco-Lopez*. *See In re Smith*, 10 F.3d 723, 724 (10th Cir.1993), *cert. denied*, — U.S. —, 115 S.Ct. 53, 130 L.Ed.2d 13 (1994). It is our judgment, however, that this holding is not implicated by the fact relied on here.

As explained above, the crime of equity skimming requires a showing of an intent to defraud. This intent must be shown to have existed prior to or in conjunction with the conduct described in the statute—in particular, engaging in the pattern or practice of purchasing family dwellings. As such, the fact Mr. Lee knew two properties had been foreclosed on does not establish

When Mr. Lee confronted Mr. Nelson with this fact, his concern and inquiry was directed solely at the impact these foreclosures would have on his credit rating and the possibility of being sued. Mr. Lee did not, however, inquire if Mr. Nelson had the intent or the financial wherewithal to pay the mortgage on any *future* properties Mr. Lee might purchase and transfer to him. Within the following month, Mr. Lee acquired five additional properties, which were subsequently transferred to Mr. Nelson and ultimately foreclosed on.

In our judgment, the jury could reasonably have inferred from these facts that Mr. Lee deliberately avoided inquiry into Mr. Nelson's future intentions because he sought to continue acquiring and transfering property in the absence of specific knowledge that once transferred Mr. Nelson would not pay the mortgage on them.

We conclude there was no error in instructing the jury on deliberate indifference. Substantial evidence was presented from which the jury could infer Mr. Lee purposely avoided knowledge of the fact Mr. Nelson had no intention of paying the mortgages on the properties transferred to him by Mr. Lee.

### C.

■ Lastly, Mr. Lee argues the district court erred in rejecting his proffered instruction on aiding and abetting. As no objection was made, our review is limited to that of plain error. *United States v. Smith,* 13 F.3d 1421, 1424 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 209, 130 L.Ed.2d 138 (1994).

■ In order to show a defendant aided and abetted the commission of a criminal offense, the government must prove:

(1) that the defendant associated herself with a criminal venture; (2) that the defendant participated in the venture as something she wished to bring about; (3) that she sought by her actions to make it succeed; and, lastly, (4) that the proof estab-

lishes the commission of the offense by someone and the aiding and abetting by the defendant so charged. *United States v. Hanson,* 41 F.3d 580, 582 (10th Cir.1994).

■ Mr. Lee argues the district court should have instructed the jury that in order to prove he aided and abetted the offense of equity skimming the government had to show he "shared in the intent to commit the offense."

The jury specifically was instructed that in order to convict Mr. Lee for aiding and abetting, it must find "that the defendant acted with the intent to cause, help or bring about the offense ... and that he sought by his actions to make that venture succeed." Mr. Lee fails to explain how his proffered instruction requires proof of anything more or different from that required by the instruction given to the jury, and we can discern only a semantic difference between the two. We conclude, therefore, no plain error was committed with respect to the instruction on aiding and abetting.

The judgment of conviction is **AFFIRMED.**

---

he actually knew that Mr. Nelson did not intend to pay the mortgages on those properties at the time he, Mr. Lee, purchased them. As such, knowledge of those two foreclosures does not establish actual knowledge and thus, reliance on this fact to infer deliberate indifference does not violate the rule of *de Francisco–Lopez.*