**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 2 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HERTZ CORPORATION,

      Plaintiff-Appellee,

v.

GADDIS-WALKER ELECTRIC INC.,

      Defendant-Appellant.

No. 96-6022
No. 96-6136
(W. District of Oklahoma)
(D.C. No. CIV-94-2010-C)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BRORBY,** and **MURPHY**, Circuit Judges.

This appeal arises from a jury verdict entered in favor of the Hertz

Corporation ("Hertz") against Gaddis-Walker Electric, Inc. ("Gaddis-Walker") for

negligent damage to property and foreseeable monetary damages. Gaddis-Walker

has instituted two separate appeals: No. 96-6022 on liability and damages; and

No. 96-6136 on the award of attorneys' fees to Hertz.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In the former, Gaddis-Walker makes the following claims: 1) the judgment requires reversal because (a) Hertz failed to offer sufficient evidence of the fact that it sustained damages, (b) Hertz failed to offer sufficient evidence that Gaddis-Walker's negligence caused Hertz's damages, (c) Hertz failed to offer sufficient evidence of the measure of its damages, and (d) the district court improperly instructed the jury on damages; 2) the district court erred in instructing the jury on negligence *per se*; and 3) the district court erred in refusing to instruct the jury on spoliation of evidence. In its appeal of the attorneys' fees, Gaddis-Walker claims that Hertz's attorneys' fees for its lost profits claims are not recoverable as "property damages" under Okla. Stat. Ann. tit. 12, § 940 and that Hertz is not entitled to any attorneys' fees for its property damage claim after the date of Gaddis-Walker's offer of judgment.

This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRMS the judgment and award of attorneys' fees entered in the United States District Court for the Western District of Oklahoma.

## FACTUAL BACKGROUND

Hertz processes all of its car rental reservations from the Hertz Worldwide Reservation Center ("the Center") in Oklahoma City. As part of an expansion of the Center, Hertz prepared to shut down its computer system for approximately eight hours on December 6, 1992. During this scheduled outage, Hertz planned to

move two "power islands" which supplied power to Hertz's computer equipment. Hertz contracted with Gaddis-Walker to perform this relocation.

At trial, Hertz presented evidence that after relocating the power islands, Gaddis-Walker improperly rewired them. As a result, Hertz's computer equipment was damaged and Hertz claimed substantial profit losses. Specifically, Hertz presented evidence that Jack Boggs, a Gaddis-Walker employee, mistakenly hooked a ground wire to a phase terminal and a phase wire to a ground terminal. After this miswiring, the Gaddis-Walker electricians turned on the circuit breaker and several cycles of high voltage electricity were sent through the power island into Hertz's center computer cabinet. The Gaddis-Walker employees determined they had made an error in wiring and rewired the power island; everything subsequently appeared to function normally. Later that morning, however, when Hertz employees attempted to power up the computer system, the computers did not function properly.

The Unisys Corporation, supplier of Hertz's computer hardware, determined that six computer circuit boards were damaged and needed to be replaced. As a result, Hertz's computer system was off-line until 9:00 a.m. on December 7, 1992, instead of for only the planned eight hours on the morning of December 6, 1992. Hertz brought this action against Gaddis-Walker for

negligence and a verdict was returned in Hertz's favor. Gaddis-Walker now appeals.

**ANALYSIS**

I.       APPEAL NO. 96-6022

A.       Damages

Gaddis-Walker claims the district court erred in denying its motions for judgment as a matter of law on damages and Hertz's purported failure to prove causation. Specifically, Gaddis-Walker asserts there was insufficient evidence of the fact of damages, of the causation of damages, and of the measure of damages. Gaddis-Walker further claims the district court abused its discretion in refusing Gaddis-Walker's proposed jury instructions regarding damages. We review the district court's denial of Gaddis-Walker's motions *de novo* and its refusal to give proposed instructions for an abuse of discretion. *See Sheets v. Salt Lake County,* 45 F.3d 1383, 1387 (10th Cir. 1995) (denial of judgment as a matter of law reviewed *de novo*); *United States v. Lee*, 54 F.3d 1534, 1536 (10th Cir. 1995) (applying abuse of discretion standard to district court's rejection of proposed jury instructions).

1.       Fact of Damages

To recover damages, a plaintiff must prove that it is reasonably certain a loss occurred. *Keener Oil & Gas Co. v. Stewart*, 45 P.2d 121, 122 (Okla. 1935).

Although Gaddis-Walker contends otherwise, it is clear there was competent proof for a jury to determine with reasonable certainty that Hertz sustained damages. There was ample evidence to show that due to the miswiring, Hertz's computer boards were damaged. A witness from Unisys testified that the six computer boards were damaged and required replacement. Gaddis-Walker's own experts confirmed that the miswiring would have caused unwanted electricity to flow through the communications cables to the computer boards. The district court did not err in determining the evidence was sufficient to show that Hertz sustained damages.

## 2. Causation of damages

Gaddis-Walker claims Hertz failed to present sufficient evidence that its negligent wiring caused Hertz's injuries. Whether the plaintiff has presented sufficient evidence of causation for submission to the jury is a matter of law for the court. *See Houston v. Reich*, 932 F.2d 883, 888 (10th Cir. 1991). The court must be satisfied a jury could determine plaintiff's injury was caused by the defendant's negligence rather than by any other cause. *See Wego Perforators v. Hilligoss*, 397 P.2d 113, 115 (Okla. 1964).

Gaddis-Walker's causation challenge is threefold: (1) Hertz's only evidence of causation was that the computers worked before the negligent rewiring and did not work after; (2) because the computer boards were not available for review at

trial, Hertz was unable to demonstrate either causation or damages; and (3) there was insufficient foundation for the testimony of Hertz's expert. Gaddis-Walker relies on *Downs v. Longfellow Corp.*, an Oklahoma case which held that expert testimony and circumstantial evidence were insufficient to prove a fire was caused by a circuit overload. 351 P.2d 999, 1004 (Okla. 1960). This court, however, has noted an important distinction between the situation in *Downs* and situations like the present case:

> In [*Downs*] there was a complete failure to identify the instrumentality which caused the fire. This case is more like those in which the instrumentality has been identified, but the precise manner in which the instrumentality acted to ignite the fire is unknown.

*Federal Ins. Co. v. United States*, 538 F.2d 300, 302-03 (10th Cir. 1976). Likewise in the present case, the negligence, the miswiring, is known, but the precise manner in which the miswiring acted to damage, or whether it did in fact damage, the computer boards is arguably unknown. The more significant issue in this case, however, is whether the miswiring caused the lengthy shut-down of Hertz's computer system and Hertz's subsequent lost profits.

There was ample evidence for a jury to determine that Gaddis-Walker's negligence was the cause of Hertz's injuries. In addition to the witness from Unisys and Gaddis-Walker's own experts' testimony about the damage to the computer boards, Hertz presented expert testimony concluding that the miswiring caused the damage to the computer boards.

-6-

Gaddis-Walker argues that Hertz's expert testimony was not admissible in light of the witness's lack of training and failure to personally examine the computer boards. "District courts are accorded broad discretion in determining the competency of expert witnesses." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991). The Supreme Court has stated that in making this determination, the trial judge must examine:

> whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review.

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786, 2796 (1993) (footnote omitted).

In *Robinson v. Missouri Pac. R.R. Co.*, this court dealt with a similar claim that an expert witness lacked credentials and that his testimony was speculative. 16 F.3d 1083, 1090 (10th Cir. 1994). This court determined that the district court had not abused its discretion in allowing the witness to testify, stating: "As to the substance of [the expert's] testimony, . . . '[t]he burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion.'" *Id.* (quoting *International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 544 (1st Cir. 1988)).

Here, Gaddis-Walker extensively cross-examined Hertz's expert, challenging his qualifications and focusing on his inability to examine the computer boards. The record reflects there was also sufficient foundation for the expert's testimony and the district court did not abuse its discretion in allowing the expert to testify. The district court thus did not err in denying Gaddis-Walker's Motion for Judgment as a Matter of Law.

3. Measure of Damages

Gaddis-Walker contends that Hertz's measurement of damages based on lost profits was speculative. In *Transpower Constructors v. Grand River Dam Authority*, this court expressed the standard for submission of the measurement of damages to a jury:

> Once a party has established the fact of damages, [] "'it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits.'" *Hardesty v. Andro Corp.-Webster Div.*, 555 P.2d 1030, 1035 (Okla. 1976) (quoting *Southwest Ice & Dairy Prods. Co. v. Faulkenberry*, 203 Okl. 279, 220 P.2d 257, 261 (1950)). This evidence need not support a mathematically precise measure of damages. A reasonable approximation of the loss will suffice.

905 F.2d 1413, 1416 (10th Cir. 1990) (citation omitted); *see also Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1236 (Okla. 1989) ("[W]here the issue of uncertainty of damages arises, the rule limiting recovery of uncertain damages applies to the fact of such damages, not their measure."); *Gouin v. Continental Oil Co.*, 590 P.2d 704, 706 (Okla. Ct. App. 1978) ("If evidence is adduced

-8-

showing a causal connection between the wrong complained of and an injury, then recovery will not be denied merely because there is uncertainty in the proof as to the measure or extent of the damages.")

Hertz presented expert testimony of two certified public accountants describing the methodology used to calculate the amount of Hertz's lost profits. Hertz used a sales ratio methodology to estimate its business loss at $1,099,190.00. Gaddis-Walker's own expert witness agreed that Hertz's sales ratio methodology was proper. The point of contention is the exact time frame which should have been used to calculate the sales ratio. Gaddis-Walker's expert testified that Hertz should have used the sales ratio from the week after the power outage rather than the week before.

Hertz's expert testified, however, that the week prior to the outage was most comparable to the week of the outage. He explained that the same business travel patterns and the same marketing program would have been in place the week before the outage. He further testified that during the week before Christmas, the week following the outage, the number of reservations is traditionally lower than normal. This explanation was sufficient to submit the issue to the jury and did not require the jury to speculate or guess when it chose to accept the Hertz calculations using the week before the power outage.

Gaddis-Walker's one notable argument is that Hertz failed to deduct its marginal and overhead costs from its estimation of lost profits. Hertz's expert concluded that he had not accounted for such variable costs and that there might have been a savings had he included them. He further testified, however, that such an omission was offset by several lost revenue items which he did not include in his methodology. This court has held it proper to allow expert testimony based upon incomplete information provided the inadequacies are known to the defendant in order to thoroughly cross-examine the witness. *See Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1482-83 (10th Cir. 1985). Such was the case here. The district court did not err in allowing the expert testimony even though the witness failed to deduct certain marginal and overhead costs. It then appropriately became the duty of the jury to reject Hertz's damage theory or to reduce the amount of damages.

Gaddis-Walker makes three additional challenges to the measure of damages. First, Gaddis-Walker claims Hertz failed to prove that a single customer was unable to rent a car because of the computer outage and that Hertz's experts speculated about the number of calls Hertz lost during the outage. In response, Hertz argues that in order to account for all lost customers, it would have to survey each client to determine whether that person rented from another rental company. Hertz's expert testified that such a requirement would be

unreasonable. The evidence was sufficient to submit the issue to the jury which resolved it in favor of Hertz.

Second, Gaddis-Walker argues that Hertz could only speculate on the number of clients who called back after the outage. The record clearly indicates, however, that rather than speculating, Hertz used its own historical data to make its estimates. Third, Gaddis-Walker argues that Hertz's own data showed Hertz recuperated all of its lost business during the week following the computer outage. The Hertz data demonstrated that the volume of calls and bookings during the week following the outage were higher than those during the same week of the preceding year. While conceding it had recouped some of its lost business, the Hertz damage theory sought far less in lost profits than its average daily revenue for the year of the power outage. As a consequence, it was not error to submit the issue to the jury which resolved the question in favor of Hertz. We thus find no support for Gaddis-Walker's claim that Hertz's methodology for measuring lost profits was not a "reasonable approximation of the loss." *Transpower*, 905 F.2d at 1416.

4.    Jury Instruction

Gaddis-Walker claims the district court abused its discretion in failing to give its proposed jury instruction regarding speculation. Gaddis-Walker requested the following jury instruction:

> No Speculation. Your decision must be based upon probabilities, not possibilities. It may not be based upon speculation or guesswork.

The court instead instructed the jury:

> Any damages you award must have a reasonable basis in the evidence. They need not be mathematically exact, but there must be enough evidence for you to make a reasonable estimate of damages without speculation or guesswork.

By incorporating a statement regarding speculation and guesswork in its own instruction, the district court essentially instructed the jury as Gaddis-Walker requested and thus did not abuse its discretion. *See Melton v. City of Oklahoma City*, 879 F.2d 706, 732 (10th Cir. 1989) (stating that although party is entitled to instruction on its theory of case, party is not entitled to particular wording of its choice).

Furthermore, the district court did not abuse its discretion in refusing Gaddis-Walker's proposed jury instruction regarding Hertz's burden of proof on damages. Gaddis-Walker requested the following instruction:

> Damages - Burden of Proof. Hertz may recover damages for its alleged lost revenue as a result of an interruption of its business only if:

1) it is reasonably certain by competent proof that a loss occurred; and
2) the amount of a loss actually is determined, not by guesswork, conjecture, uncertain estimates, or mere conclusions, but by tangible facts.

Instead, the district court gave the following two instructions:

You may award compensatory damages only for damages that plaintiff proves were directly caused by the alleged wrongful conduct. The damages that you award must be fair compensation for all damages, no more and no less.

Any damages you award must have a reasonable basis in the evidence. They need not be mathematically exact, but there must be enough evidence for you to make a reasonable estimate of damage without speculation or guesswork.

The burden is upon the plaintiff in a civil action such as this to prove every essential element of its claim by a preponderance of the evidence. If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, the jury should find for the defendant.

Gaddis-Walker claims that the burden of proof instruction was erroneous.

Gaddis-Walker contends that the fact of damages is subject to a "reasonable degree of certainty" burden of proof. This "reasonable degree of certainty" standard, or a "reasonable probability" standard, is used for questions of sufficiency of the evidence, not for factual jury determinations. *See McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 471 (Okla. 1987).

The sufficiency of the evidence to show cause in fact presents a question of law for the court. Sufficiency of evidence is the "legal standard which is applied to determine whether the case may go to the jury." A plaintiff's burden of proof of causation is twofold. First, a plaintiff has the burden of producing evidence, satisfactory to

-13-

the judge, that a reasonable person could believe in the existence of the causal link and that the evidence should be weighed by the jury. A verdict will be directed for the defendant if a plaintiff fails to carry this burden. Secondly, a plaintiff bears the burden of persuasion should the evidence be allowed to reach the jury. The standard for sufficiency of proof of evidence, related to a plaintiff's first burden, should not be confused with the standard of proof, associated with a plaintiff's second burden, which is applied by the jury in reaching a final verdict. Generally, in civil cases the standard of proof means a preponderance of the evidence.

*Id.* (footnote omitted).

Thus, the district court correctly instructed the jury that Hertz's burden of proof for both the questions of the fact and the measure of damages were a preponderance of the evidence.

B.     Negligence *per se*

Gaddis-Walker next contends the district court should not have instructed the jury on negligence *per se*. Gaddis-Walker premises its argument on Hertz's purported failure to introduce evidence from which the jury could determine that the violation of a statute or ordinance caused Hertz's injury. We review *de novo* whether it was proper to instruct the jury on a theory of recovery. *See United States v. Migliaccio*, 34 F.3d 1517, 1523 (10th Cir. 1994) (whether jury is properly instructed is reviewed *de novo*).

Oklahoma law requires three elements for a claim of negligence *per se*: (1) the injury was caused by the defendant's violation of a statute or ordinance; (2) the injury was the type intended to be prevented by the statute or ordinance; and

-14-

(3) the injured party was in the class of persons intended to be protected by the statute or ordinance. *See Ohio Cas. Ins. Co. v. Todd*, 813 P.2d 508, 510 (Okla. 1991).

Hertz produced evidence that Gaddis-Walker violated both an ordinance and a statute. The pertinent ordinance requires an apprentice wireman to work under supervision of a journeyman wireman or electrical contractor. Okla. City Elec. Code, art. II, § 18-22. The pertinent statute provides:

> Nothing herein contained shall be construed to prevent the employment of apprentices to perform any of the work herein provided said apprentice performs said work under the direct supervision of a licensed electrical contractor or journeyman. No license, examination or fees shall be required of such apprentices.

Okla. Stat. Ann., tit. 19, § 863.4.

The evidence at trial showed that Jack Boggs, who wired the power island, was an apprentice electrician. Gaddis-Walker admits that "a factual dispute may have existed regarding whether Boggs was working under the 'direct supervision' of a journeyman electrician at the time this incident took place." It counters, however, that any violation was not the cause of the miswiring. For support, Gaddis-Walker notes that the only two witnesses who testified about this issue stated Boggs' failure to be a licensed journeyman or, by implication, supervised by a licensed journeyman, had no bearing on whether the power island was miswired. These same two witnesses, however, also testified that a competent

-15-

journeyman would have run an ohmmeter test before turning on the circuit breaker, which Boggs failed to do. Hertz presented further evidence that an ohmmeter test would have detected the miswiring. Thus, the jury could have reasonably inferred from the evidence that had Boggs been a licensed journeyman or had he been supervised by a licensed journeyman, he would have run the ohmmeter test and detected the miswiring before engaging the circuit breaker.

The district court proceeded to indicate in the jury instructions that it was a question of fact whether Boggs' failure to be supervised or to have a license was the cause of Hertz's injuries. The instruction read:

> In addition to the duty to exercise ordinary care, there are also duties imposed by statutes and ordinances. If you find that a person violated any one of the following statutes or ordinances and the violation was the direct cause of the injury, then such violation in and of itself would make such person negligent.

Accordingly, the causation element was submitted to the jury as a factual determination. If the jury found that Boggs' actions violated the statute, the jury was instructed to determine whether that violation caused Hertz's injuries. There was ample evidence to support the court's negligence *per se* instruction. The jury heard testimony that a licensed journeyman would have taken measures to prevent the damage to the computer boards. As a consequence, the district court did not err in submitting the negligence *per se* issue to the jury.

C.      Spoliation of the Evidence

-16-

Gaddis-Walker also argues the district court erred in failing to instruct the jury on spoliation of the evidence. Gaddis-Walker relies upon the destruction of the six computer boards, which it claims were crucial to the causation issue. Gaddis-Walker requested the jury be instructed that if a party fails to preserve evidence, it may infer the evidence was unfavorable to that party. The district court rejected the proposed instruction, a decision we review for an abuse of discretion. *See Lee*, 54 F.3d at 1536.

This court has held that absent a showing of bad faith, failure to produce records is not sufficient to warrant a spoliation or missing evidence instruction. *See Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir. 1985). The district court, relying on *Higgins*, declined to use Gaddis-Walker's proposed instruction, concluding there was no showing Hertz had destroyed the evidence in bad faith. The computer boards were under the control of Unisys, who is not a party to this action. Unisys took the computer boards for repair and later made the decision to destroy them. The district court reasoned:

> I think, under the circumstances of this case, where there is no suggestion or intimation of bad faith conduct on the part of the plaintiff and where there is a substantial question of who had control over the computer boards in question at the times in question, that it would be improper to give that instruction, but I think any argument

made by counsel regarding inferences the jury can draw is certainly fair game.[1]

The district court's determination that there was no bad faith conduct by Hertz is supported by the record and is not clearly erroneous. The district court therefore did not abuse its discretion in refusing Gaddis-Walker's jury instruction on spoliation of the evidence. *Higgins*, 752 F.2d at 496.

## II.    APPEAL NO. 96-6136

Gaddis-Walker contends that Hertz made two separate claims, one for property damage and one for lost profits. Gaddis-Walker further concludes that under Okla. Stat. tit. 12, § 940, Hertz was only entitled to recover attorneys' fees for its property damage claim and not for its lost profits claim. This court reviews "the court's 'legal analysis which provides the basis for the fee award'" *de novo*. *Aguinaga v. United Food & Commercial Workers Int'l*, 993 F.2d 1480, 1481 (10th Cir. 1993) (quoting *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1355 (10th Cir. 1992)).

The Oklahoma statute provides:

> In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorneys' fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

---

[1]In reliance, counsel for Gaddis-Walker made reference to the missing computer boards in closing argument.

-18-

Okla. Stat. Ann. tit. 12, § 940. Gaddis-Walker argues the plain language of this statute allows fee awards only for actual property damage and not for lost profits. *See Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1011, 1013 (Okla. 1985) ("12 Okla. Stat. § 940(A) contemplates only those actions for damages for the negligent or willful physical injury to property.").

Gaddis-Walker's argument is premised on a fallacious assumption: that Hertz's negligence claim is severable into a property damage claim and a lost profits claim. To the contrary, Hertz brought its claim under one theory of liability: negligence. Under this theory, Gaddis-Walker's negligence in turn caused the injury to Hertz's property and the ensuing lost profits. In *Marino v. Otis Engineering Corp.*, this court upheld an award of attorneys' fees in a comparable setting, reasoning that the property damage resulted in the devaluation of a lease on the property. 839 F.2d 1404, 1412 (10th Cir. 1988) ("[The] lease has been devalued, if at all, because of the physical damage caused to the lease properties. . . . [The party's] allegations center around the physical injury to the property and thus fall within the mandatory coverage of Section 940(A) authorizing the recovery of attorneys' fees.").

Hertz's claim arose out of one purported act of negligence: the miswiring of the computer boards. It is this negligent wiring which the jury found caused the 24- to 25-hour computer outage, hindering Hertz's ability to make and

confirm reservations. The lost profits were the direct and foreseeable result of Gaddis-Walker's negligence, not an additional theory of liability, as Gaddis-Walker argues. Similar to *Marino*, Hertz's lost profits claim flows from the physical damage to the computer boards and thus falls within the meaning of Section 940(A).

The jury verdict was consistent with the unitary theory of liability in not distinguishing between property damage and lost profits. The jury awarded Hertz a lump-sum of $1,063,249.00. Gaddis-Walker argues, however, that Hertz must show what portion of the award was intended for property damage and what amount was intended for lost profits. To the contrary, the burden is on the party contesting the award to request a verdict form or jury interrogatories categorizing damages. *See Melton,* 879 F.2d at 725 (refusing to reach defendant's contest of damages where defendant did not request special interrogatories to accompany jury verdict form). The record provided this court does not indicate that Gaddis-Walker requested a special-verdict form or jury interrogatories delineating separately amounts for property damage and lost profits. *See Mid-West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983) (upholding verdict and refusing to assume what amounts were intended for different elements of damages). As a consequence, Gaddis-Walker is prohibited

from premising the challenge to an award of fees on the failure of the jury to categorize damages.

Gaddis-Walker's final challenge to the award of attorneys' fees invokes its offer of judgment under Rule 68, Federal Rules of Civil Procedure. Rule 68 provides:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . .
> . . .
> If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed. R. Civ. P. 68.

On April 27, 1995, Gaddis-Walker made a $15,564.00 Rule 68 offer of judgment for the "total amount of the property damage." Hertz did not respond to Gaddis-Walker's offer. Gaddis-Walker now argues that Hertz cannot recover any attorneys' fees after the date of the offer because the verdict for property damages was not more favorable than Gaddis-Walker's offer. To so hold would require this court to speculate in apportioning the jury's general verdict between damages to property and lost profits. For the reasons previously indicated, this court cannot so speculate or apportion. *See Mid-West*, 717 F.2d at 501. The verdict of $1,063,249.00 exceeds Gaddis-Walker's Offer of Judgment and Rule 68 is

inapplicable. The district court thus did not err in awarding Hertz the full amount of attorneys' fees.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment and award of attorneys' fees.

ENTERED FOR THE COURT,


Michael R. Murphy
Circuit Judge